UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

ERNEST LESTER YOUNG, individually
and as assignee of Interim
Management Incorporated, d/b/a
Interim Health Care, and of the
Estate of Cecilia D. Wall,
                    *Plaintiff-Appellant,*

v.

TEXTRON, INCORPORATED, a Delaware
corporation; THE PRUDENTIAL
INSURANCE COMPANY OF AMERICA;
TEXTRON BENEFITS PLAN, an
employee welfare benefits plan;
DEERE & COMPANY, a Delaware
corporation; JOHN DEERE CONSUMER
PRODUCTS, INCORPORATED, Health and
Dental Plan for Hourly and Salary
Employees, an employee welfare
benefits plan,
                    *Defendants-Appellees.*

No. 00-1686

Appeal from the United States District Court
for the District of South Carolina, at Rock Hill.
Dennis W. Shedd, District Judge.
(CA-99-1595-0-19)

Argued: May 7, 2001

Decided: June 19, 2001

Before NIEMEYER, LUTTIG, and KING, Circuit Judges.

Affirmed by unpublished per curiam opinion. Judge King wrote a dissenting opinion.

---

**COUNSEL**

**ARGUED:** John Martin Foster, Jr., J.M. FOSTER LAW OFFICE, Rock Hill, South Carolina, for Appellant. Michael T. Brittingham, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C., Columbia, South Carolina, for Appellees Textron, et al.; Franklin Grady Shuler, Jr., TURNER, PADGET, GRAHAM & LANEY, P.A., Columbia, South Carolina, for Appellee Prudential.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Ernest Young, the husband of Cecilia Wall, sued the employee benefit plans of Textron, Inc. and Deere & Company under ERISA for $8,859 expended by Wall during the few months before her death on April 17, 1995. The expenses were incurred for the assistance provided by an unlicensed caregiver to permit Wall to "die with dignity." The Deere Plan, which had succeeded the Textron Plan in providing benefits to Wall, refused to reimburse Wall's estate for the expenses because the expenses were not medically necessary and therefore not covered by the terms of the plan. The district court agreed and entered summary judgment in favor of the defendants. We affirm.

Wall, a resident of Lake Wylie, South Carolina, worked for the Homelite Division of Textron in Charlotte, North Carolina. In April 1994, she was diagnosed with an inoperable and terminal brain tumor which, a short time later, forced her to cease working. Her treating physician "ordered home health care services" beginning in July

1994. Even after Wall stopped working, Textron's medical benefits plan (the "Textron Plan") continued to provide Wall with benefits, compensating her for medical treatment, therapy, and even some custodial care.

Following Textron's sale of the Homelite Division to Deere & Company in August 1994, the Deere medical benefits plan (the "Deere Plan") succeeded the Textron Plan and provided similar coverage to the Homelite Division employees, effective January 1, 1995. Both plans were administered by The Prudential Insurance Company of America. Although Homelite Division workers became covered under the Deere Plan in January 1995, Wall was not provided with any information regarding the switch in coverage. To the contrary, when Wall's husband inquired of a Homelite Division representative in late summer 1994 about Wall's medical coverage, the representative told Young that "because Cecilia was put on permanent disability before the sale to John Deere, her coverage would stay the same."

While still receiving benefits under the Textron Plan, Wall's doctor issued an order, effective December 18, 1994, instructing that Wall be given assistance of an unlicensed caregiver for "14 hours per day as requested by hospice/husband." The stated purposes of prescribing this caregiver were to help Wall with all activities of daily living; to prepare and serve meals to Wall as requested by Wall or her family; and to "provide companionship" for Wall, so as to allow her to "die with dignity." For the next two weeks, Wall was reimbursed expenses for this custodial care. Beginning January 3, 1995, however, when the Deere Plan succeeded the Textron Plan, the administrator refused to provide reimbursement for expenses of custodial care. This amount eventually totaled $8,859. The Deere Plan did, however, continue to pay Wall's medical expenses. In denying coverage for the custodial care, the administrator did not refer to any specific plan by name, and when Young requested a copy of the plan, he was referred to Textron, who supplied Young with a copy of the Textron Plan. Only after commencing this lawsuit against Textron did Young become aware that the Deere Plan, rather than the Textron Plan, might have become applicable to Wall during the period for which benefits were claimed. Young accordingly joined the Deere Plan as an additional defendant in this action.

On motion for summary judgment, the district court entered judgment in favor of the defendants, determining that the Deere Plan was the one relevant when considering coverage for the expenses incurred by Wall during the period from January 1995 to her death in April 1995 and that the Deere Plan's administrator, in denying coverage for the $8,859 incurred to pay the unlicenced caregiver, did not abuse the discretion given the administrator under the plan. This appeal followed.

On appeal, the parties continue to debate which of the plans was relevant in determining whether Wall's 1995 expenses were covered. Resolution of that issue, however, does not advance either party's position on appeal. Whichever plan applied, it is clear that Wall had no coverage for the $8,859 in expenses incurred for "custodial care." The Textron Plan provides that it does not cover "[c]ustodial care as determined by the Claims Administrator which is provided primarily to assist an individual in the activities of daily living." It also provides that its benefits pay only expenses that are "medically necessary." Similarly, the Deere Plan provides coverage only to those expenses incurred for care that is "not mainly Custodial Care." "Custodial care" is defined by that plan as "care that provides a level of routine maintenance for the purpose of meeting personal needs." Because the expenses at issue in this case were incurred for services such as preparing and serving meals and providing companionship, they fall squarely under the custodial care exclusions of both plans.

Young argues that notwithstanding the language of the plans, Prudential as administrator of both plans provided Wall coverage for custodial care during the last two weeks in December 1994 and that therefore it should be estopped from denying coverage for the same type of services thereafter. In interpreting ERISA plans, however, we have clearly foreclosed the use of an estoppel theory to alter the unambiguous terms of an ERISA plan. *See HealthSouth Rehabilitation Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1010-11 (4th Cir. 1996). Accordingly, in concluding that there is no coverage under the unambiguous terms of either the Deere Plan or the Textron Plan, we cannot consider the fact urged by Young that the plans' administrator in fact paid some of the same type of expenses prior to its refusal to pay the final claim.

For the reasons given, we affirm the judgment of the district court.

*AFFIRMED*

KING, Circuit Judge, dissenting:

After careful consideration of the record, the briefs, and the oral argument, I remain unpersuaded that the terms of the Deere Plan unambiguously exclude coverage for the contested services provided to Ms. Wall from January 1995 to April 1995. Quite simply, on this record, neither the description of the services provided, nor Prudential's explanation of its basis for denying benefits, sufficiently establishes that the services fall under the Plan's custodial care exclusion.

In the circumstances, I believe the district court's decision should be vacated and this case remanded for further development of the record on the pertinent issues, particularly the applicability of the Plan's hospice care coverage. With all respect to my colleagues, I dissent.